# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAYLE M. FOWLER, a California individual,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF PHOENIX, INC., an AZ corporation; APOLLO EDUCATION GROUP, INC., an AZ corporation; APOLLO GLOBAL MANAGEMENT LLC, a Delaware limited partnership; APOLLO MANAGEMENT, L.P., a DE limited Partnership; AP VIII QUESO HOLDINGS, a DE limited Partnership; THE VISTRIA GROUP, LLC, a DE limited liability company; PETER V. SPERLING, UOP Officer, AZ individual; GREGORY W. CAPPELLI, Officer, AZ; PETER COHEN, Officer and AZ individual; Anthony Miller  Officer, also known as Anthony "Tony" Miller,<br><br>　　　　　　　　　　Defendants. | Case No.: 18cv1544-WQH-KSC<br><br>**ORDER** |

HAYES, Judge:

　　The matters before the Court are the Motions to Dismiss filed by Defendants. (ECF Nos. 25, 28).

## I.　BACKGROUND

　　On July 9, 2018, Plaintiff Gayle Fowler, proceeding pro se, initiated this action by filing a complaint against Defendant University of Phoenix and certain affiliates, officers,

and employees (the University). (ECF No. 1). On September 14, 2018 Plaintiff filed a first amended complaint, the operative Complaint in this matter. (ECF No. 11). Plaintiff brings claims for fraud, breach of fiduciary duty, "delayed accrual of statute of limitations," breach of contract, intentional interference with contractual relations, intentional interference with prospective economic relations, negligent and fraudulent misrepresentations, "extortion and threats," breach of covenant of good faith and fair dealing, and unjust enrichment. Plaintiff's claims are based on allegations that she earned a degree from the University as early as 2002, and that no degree was conferred until 2015. Plaintiff alleges that she enrolled in 1999 relying on promises that she would obtain a degree in two years at a reduced price through transfers, waivers, or prior learning assessments (PLAs) for her previous classes, professional experiences, and military experiences. Plaintiff alleges that she relied on promises she would receive a high-quality education, high-quality academic advising, alumni benefits, and increased earning potential.

Plaintiff alleges that she did not receive a high-quality education, alumni benefits, or increased earning potential. Plaintiff alleges that the University did not grant her certain transfers, waivers, or PLAs when she was entitled to them. Plaintiff alleges that the University failed to provide adequate academic advising and records regarding transfers, waivers, or PLAs, or her degree progress. Plaintiff alleges that in 2005 she was instructed to pay for fees and classes that were not required for her degree program, and that she objected to such instructions. Plaintiff alleges that she made ongoing unsuccessful efforts to obtain her degree. Plaintiff alleges that she made ongoing efforts to retain an attorney, which were unsuccessful until 2014. Plaintiff alleges that in 2014 she engaged an attorney to represent her in an attempt to mediate with the University. Plaintiff alleges that the University subsequently reviewed her file and, in late 2015, granted her a degree inaccurately dated 2005.

Plaintiff alleges that when she reviewed her records in 2016, she realized that she had earned her degree by 2002. Plaintiff alleges the record review revealed that the

18cv1544-WQH-KSC

University falsely told Plaintiff's lender that she had graduated, and falsely told Plaintiff that changes to her loan due date and interest were caused by Plaintiff refinancing her loans. Plaintiff alleges that the University convinced her to enroll because she was eligible for federal funding, from which the University unfairly benefitted. Plaintiff alleges that the University did not intend to provide her with a degree.

Plaintiff claims Defendants owe her "more than $75,000." (ECF No. 11 at 2). Plaintiff alleges that she "paid UOP over $30,000." *Id.* at 40. Plaintiff alleges that Defendants caused her to incur an additional $11,000 in loan charges. *Id.* at 8, 41, 47. Plaintiff alleges that "[i]ncidentals, books, and accrued interest on loans amounted to direct costs . . . well over $45,000." *Id.* at 5. Plaintiff alleges she "lost at least $800,000 in average earnings based on national earnings statistics." *Id.* at 48. Plaintiff seeks "an award of civil penalties and assessments, response costs, and compensatory, punitive, treble, restitution, including reimbursement to Gayle all monies paid to UOP on behalf of the student under Title IV loans dispersed funds to UOP." *Id.* at 75–76.

On September 28, 2018, Defendant University of Phoenix filed a motion to dismiss for failure to comply with applicable statutes of limitations and failure to state a claim, among other grounds. (ECF No. 25).

On September 28, 2018, Defendants AP VIII Queso Holdings, Apollo Education Group, Inc., Apollo Global Management LLC, Apollo Management, L.P., Gregory W. Cappelli, Peter Cohen, Anthony Miller, Peter V. Sperling, and The Vistria Group, LLC (collectively, the Apollo Defendants) filed a notice of joinder to the motion to dismiss filed by Defendant University of Phoenix. (ECF No. 26).

On October 1, 2018, the Apollo Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(2) for lack of personal jurisdiction and Fed. R. Civ. P. Rule 12(b)(6) for failure to state a claim. (ECF No. 28).

On October 13, 2018, Plaintiff filed a response opposing the motions to dismiss. (ECF No. 31).

1   On October 16, 2018, Plaintiff filed a motion for default judgment and a request for
2   judicial notice. (ECF No. 36).

3   On October 31, 2018, Defendant University of Phoenix and the Apollo Defendants
4   filed replies supporting the motions to dismiss. (ECF Nos. 43, 44).

5   On November 2, 2018, Defendants filed a response opposing Plaintiff's motion for
6   default judgment and not opposing Plaintiff's request for judicial notice. (ECF No. 44).

7   On November 4, 2018, Plaintiff filed a surreply opposing the motions to dismiss and
8   supporting her motion for default judgment and request for judicial notice. (ECF No. 45).

9   On November 19, 2018, Defendants filed a response to the Surreply. (ECF No. 50).

10  On November 28, 2018, the Court denied Plaintiff's motion (ECF No. 36) as to the
11  request for default judgment and denied her motion as to the request for judicial notice.
12  (ECF No. 53).

13  ## II.   STATUTE OF LIMITATIONS

14  Defendants assert that Plaintiff's claims are time barred, and that she waited sixteen
15  years to bring her claims based on failure to timely grant her degree. Defendants contend
16  that the statute of limitations periods began to run in 2002, the year Plaintiff alleges she
17  was entitled to the degree she did not receive. Defendants contend the period expired four
18  years later, for breach of contract and breach of fiduciary duty claims, and two years later
19  for the intentional interference with contract and prospective economic advantage claims,
20  and the breach of the implied covenant of good faith and fair dealing claim.

21  In California, a cause of action generally "accrues when the wrongful act is done and
22  not when a plaintiff discovers he or she has a cause of action to pursue." *Moreno v.*
23  *Sanchez*, 131 Cal. Rptr. 2d 684, 688–89 (Ct. App. 2003). "To determine the statute of
24  limitations which applies to a cause of action it is necessary to identify the nature of the
25  cause of action, i.e., the gravamen of the cause of action. The nature of the right sued upon
26  and not the form of action nor the relief demanded determines the applicability of the
27  statute of limitations under our code. . . . What is significant for statute of limitations
28  purposes is the primary interest invaded by defendant's wrongful conduct." *Hydro-Mill*

*Co. v. Hayward, Tilton & Rolapp Ins. Assocs., Inc.*, 10 Cal. Rptr. 3d 582, 589 (Ct. App. 2004) (quotations and alterations omitted).

In this case, the shortest statutory period for Plaintiff's claims is two years and the longest is four years. *See Miller v. Bechtel Corp.*, 663 P.2d 177, 183 n.1 (Cal. 1983) (fraud, three years) (citing Cal. Civ. Proc. Code § 338); *Thomson v. Canyon*, 129 Cal. Rptr. 3d 525, 534–35 (Ct. App. 2011) (breach of fiduciary duty, three years if based on fraud and two if based on professional negligence) (citing §§ 338(d), 339(1)); §§ 337 (breach of written contract, four years); *Hydro-Mill*, 10 Cal. Rptr. 3d at 590 (breach of oral contract, two years) (citing § 339); *Knoell v. Petrovich*, 90 Cal. Rptr. 2d 162, 164 (Ct. App. 1999) (intentional interference with contractual relations and prospective economic relations, two years) (first citing § 339(1), then citing *Tu-Vu Drive-In Corp. v. Davies*, 426 P.2d 505, 506 (Cal. 1967)); *Hydro-Mill*, 10 Cal. Rptr. 3d at 590 (negligent misrepresentation, two years if based on professional negligence) (citing § 339); *Ventura Cty. Nat. Bank v. Macker*, 57 Cal. Rptr. 2d 418, 419 (Ct. App. 1996) (negligent misrepresentation, three years if based on fraud) (citing § 338(d)); *Berglund v. Rogers*, No. B282175, 2018 WL 4144416, at *3 n.4 (Cal. Ct. App. Aug. 30, 2018) ("Berglund claims, without citation, that extortion claims are governed by the three-year statute of limitations period under section 338, instead of the two-year period under section 335.1. Whether subject to a two- or three-year limitations period . . . her claims are untimely."); *Archdale v. Am. Intern. Specialty Lines Ins. Co.*, 64 Cal. Rptr. 3d 632, 653 (Ct. App. 2007) (breach of the implied covenant of good faith and fair dealing, two years if based on tort and four if based on contract) (citing §§ 337(1), 339(1)); *Fed. Deposit Ins. Corp. v. Dintino*, 84 Cal. Rptr. 3d 38, 50 (Ct. App. 2008) (unjust enrichment, three years) (citing § 338(d)).

The gravamen of Plaintiff's claims is the University's wrongful refusal to accept certain transfers, waivers, or PLAs, wrongful instruction to enroll and pay for additional classes with the University, and wrongful refusal to confer her degree when she satisfied all the requirements. Taking the facts alleged in the Complaint as true and in the light most favorable to the Plaintiff, she satisfied the degree requirements as early as 2002 and no

1 later than 2005, and the University did not confer her degree at those times. The alleged
2 "wrongful act" at issue in this case occurred as early as 2002 and no later than 2005. *See*
3 *Moreno*, 131 Cal. Rptr. 2d at 688–89. The longest statutory period applicable to Plaintiff's
4 claims expired in 2009. Absent an exception, Plaintiff's claims are time barred.

5 Plaintiff contends that the delayed discovery doctrine applies because she
6 demonstrated diligence and "continuously reasonably and in good faith worked towards
7 remedy." (ECF No. 31 at 16). Plaintiff asserts that she could not have discovered the
8 necessary facts before the University reviewed her records between 2014 and 2015,
9 because "[i]t was within UOP/Apollo's sole discretion to determine what units they would
10 accept to award degree." *Id.* Plaintiff asserts that she did not know "when or if the college
11 would determine she earned her degree or if it would be granted." (ECF No. 45 at 6).
12 Plaintiff asserts that she "reviewed her official transcripts early 2016," and "realized all
13 education accounted for that degree was completed and provided to UOP before 2005."
14 (Compl., ECF No. 11 at 54).[1] Plaintiff asserts that she made the "actual discovery she had
15 an excess of units to graduate prior to 2005 that UOP received and could have [ac]cepted"
16 because of her early 2016 review. *Id.*

17 Defendants assert that a reasonable investigation in 2002 would have revealed the
18 necessary facts underlying Plaintiff's claims regarding degree completion. Defendants
19 contend that delayed discovery does not apply because the thirteen years of ongoing
20 disputes over Plaintiff's degree show her actual knowledge of the issues long before 2015.

21 In California, the discovery rule delays accrual of the statute of limitations "where it
22 is manifestly unjust to deprive plaintiffs of a cause of action before they are aware that they
23 have been injured." *Moreno*, 131 Cal. Rptr. 2d at 689 (quotation omitted). "In order to
24 rely on the discovery rule for delayed accrual of a cause of action, "[a] plaintiff whose

---

[1] The Court construes Plaintiff's third cause of action, for delayed accrual of the statute of limitations, as setting forth grounds to apply delayed discovery, equitable tolling, or equitable estoppel in this case. *See Bernhardt v. L.A. Cty.*, 339 F.3d 920, 925 (9th Cir. 2003) ("Courts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints.").

complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920–21 (Cal. 2005).

> [A] two-part analysis is used to assess when a claim has accrued under the discovery rule. The initial step focuses on whether the plaintiff possessed information that would cause a reasonable person to inquire into the cause of his injuries. Under California law, this inquiry duty arises when the plaintiff becomes aware of facts that would cause a reasonably prudent person to suspect his injuries were the result of wrongdoing. . . . If the plaintiff was in possession of such facts, thereby triggering his duty to investigate, it must next be determined whether "such an investigation would have disclosed a factual basis for a cause of action[.] [T]he statute of limitations begins to run on that cause of action when the investigation would have brought such information to light."

*Alexander v. Exxon Mobil*, 162 Cal. Rptr. 3d 617, 629–30 (Ct. App. 2013) (quoting *Fox*, 110 P.3d at 921). "[A] suspicion of wrongdoing, coupled with a knowledge of the harm and its cause, will commence the limitations period. . . . [I]t is the discovery of facts, not their legal significance, that starts the statute." *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 928–29 (Cal. 1988). Claims based on fraud or mistake accrue when the "aggrieved party" discovers "the facts constituting the fraud or mistake" and "at least suspects . . . that someone has done something wrong to him, wrong being used, not in any technical sense, but rather in accordance with its lay understanding . . . ." *Dintino*, 84 Cal. Rptr. 3d at 52 (first quoting Cal. Civ. Proc. Code § 338(d), then quoting *Norgart v. Upjohn Co.*, 981 P.2d 79, 88 (Cal. 1999)) (alterations and internal quotation marks omitted). The discovery rule requires a plaintiff to "seek to learn the facts necessary to bring the cause of action" "within the applicable limitations period . . . he cannot wait for them to find him and sit on his rights; he must go find them himself if he can and file suit if he does." *Norgart*, 981 P.2d at 88–89.

Equitable tolling may extend a statute of limitations period "[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one."

*McDonald v. Antelope Valley Cmty. Coll. Dist.*, 194 P.3d 1026, 1031 (Cal. 2008). "[E]quitable tolling . . . require[s] a showing of three elements: "timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." *Id.* at 1033. "[T]e effect of equitable tolling is that the limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded." *Lantzy v. Centex Homes*, 73 P.3d 517, 523 (Cal. 2003). For example, California courts have equitably tolled a one-year limit to sue on an insurance policy during the period between timely notice of the loss until the insurer denies the claim, and tolled a six-month limit to sue a public agency in state court during plaintiffs' timely federal suit. *Id.* (citations omitted). "[V]oluntary abandonment does not categorically bar application of equitable tolling, but it may be relevant to whether a plaintiff can satisfy the three criteria for equitable tolling." *McDonald*, 194 P.3d at 1039–40.

Equitable estoppel prevents a defendant "from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period." *Lantzy*, 73 P.3d at 532 (quotation omitted). "The defendant's statement or conduct must amount to a misrepresentation bearing on the necessity of bringing a timely suit; the defendant's mere denial of *legal liability* does not set up an estoppel." *Id.* at 533 n.18; *see also Lukovsky v. City & Cty. of S.F.*, 535 F.3d 1044, 1051–52 (9th Cir. 2008) ("[T]he plaintiff must point to some fraudulent concealment, some active conduct by the defendant above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.") (quotations omitted).

"When a plaintiff reasonably should have discovered facts for purposes of the accrual of a ca[u]se of action or application of the delayed discovery rule is generally a question of fact, properly decided as a matter of law only if . . . the allegations in the complaint and facts properly subject to judicial notice . . . can support only one reasonable conclusion." *Alexander*, 162 Cal. Rptr. 3d at 630; *see also Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) ("When a motion to dismiss is based on the running of

the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.").

Taking the facts in the Complaint as true, in the light most favorable to Plaintiff, she enrolled in 1999 and completed her degree in 2002. Plaintiff alleges that there has been "an ongoing battle since 2003," during which she "contacted UOP every year." (ECF No. 11 at 6). Plaintiff alleges that she "hoped to appeal" the University's 2005 decision not to confer her degree, and that she "contact[ed] UOP from the start of 2007 through mid-year." (ECF No. 11-2 at 31). Plaintiff alleges,

> Gayle called aggressively in 2008, after the 2007 subprime real estate melt down when Gayle tried to get her degree for job prospects. . . . She tried UOP again in 2009 from her job site, with her boss present, at performance review and raise time in 2009. . . . Gayle tried UOP again when she was applying for jobs in 2010 when she unemployed and desperately needed to prove education. Each year Gayle called UOP hoping to find a reasonable worker who would help, but all attempts resulted in failure.

*Id.* Plaintiff alleges,

> In 2011, UOP/Apollo called Gayle . . . to join UOP master's program. On the phone, UOP/Apollo asserted Gayle had earned UOP BS degree. Gayle explained the judicial authority of UOP refused to validate that earned credential unless Gayle paid UOP more money and duplicated classes. . . . Gayle enrolled in 2012 as it was the only way UOP provided for her to get her earned degree represented on the phone.

(ECF No. 11 at 6). Plaintiff alleges, "UOP stopped responding to Gayle or hinders resolution with UOP actions, advice, or non action. May 4, 2012 Gayle asked advisor about dispute resolution options. Phone number UOP gave and Gayle called did not get a response." *Id.* at 58. Plaintiff alleges,

> Gayle called attorneys throughout the many years of battle from 2003 through 2014, but learned . . . litigation was a long shot; an expensive undertaking due to possible statute of limitations rulings since Gayle was warned court precedence sided with the college institutions as courts did not like to get involved in academic rulings. Instead of filing a suit against the odds with no assurance it would achieve degree earned and not cause more harm, Gayle hired an attorney to attempt to mediate.

ECF No. 11 at 8; *see also* ECF No. 11-2 at 70 ("Gayle had challenges finding an attorney due to financial limitations, conflicts of interest, and lawyers unwillingness to go against a governing board of a University which was warned to be risky due to the span of educational timeline and complexities of academic issues and courts favoring academic institutions.").

As stated in a 2014 email by attorney Janet Sobel on Plaintiff's behalf, on October 3, 2012, Plaintiff obtained a transcript that made it "apparent to Gayle that the University had in its possession the documentation to show she had earned her degree and that they were falsely representing she had fallen short and needed to take more University courses – at a price." (ECF No. 31-1 at 29). The email states that based on the October 2012 transcript, Plaintiff "began to think it was a tactic of the University to get her to spend more money on classes" rather than grant her transfers, waivers, or PLAs. *Id.*

Applying the first step of the discovery rule in this case, the facts alleged demonstrate that Plaintiff was "aware of facts that would cause a reasonably prudent person to suspect [her] injuries were the result of wrongdoing," *see Alexander*, 162 Cal. Rptr. 3d at 629, as early as 2005 (when "UOP did nothing," a result "Gayle hoped to appeal"), *see* ECF No. 11-2 at 31; before the 2011 phone call (when "Gayle explained the judicial authority of UOP refused to validate that earned credential unless Gayle paid UOP more money and duplicated classes"), *see* ECF No. 11 at 6; by May of 2012 (when "UOP stopped responding to Gayle"), *see* ECF No. 11-2 at 58; and at the latest in October 2012 (when the transcript revealed to Plaintiff that the University was falsely representing she needed to take more University courses and "she began to think it was a tactic of the University to get her to spend more money on classes"), *see* ECF No. 31-1 at 29. The facts alleged demonstrate that Plaintiff had "a suspicion of wrongdoing, coupled with a knowledge of the harm and its cause"—that is, she suspected that she had satisfied the degree requirements, knew she had not been granted her degree, and suspected that she was being

told otherwise so she would pay for additional classes—as early as 2005 and no later than 2012. *See Jolly*, 751 P.2d at 929.

Applying the second step of the discovery rule, a reasonable "investigation would have disclosed a factual basis for a cause of action," *see Alexander*, 162 Cal. Rptr. 3d at 629, as early as 2005 (when Plaintiff felt she had earned her degree but "UOP did nothing"), by May of 2012 (when "UOP stopped responding to Gayle"), and at the latest in October 2012 (when Plaintiff "began to think it was a tactic of the University to get her to spend more money on classes"). The facts alleged show that Plaintiff was aware of which classes, professional experiences, and military experiences she believed should count toward her degree, and the related University policies, when she enrolled in 1999. The facts alleged show that Plaintiff knew the University rejected her position and maintained that she had not satisfied the degree as early as 2005 (when she was informed she had not satisfied all requirements despite her requests for transfers, waivers, or PLAs), by May 2012 (when Plaintiff stopped receiving responses from the University), and no later than October 2012 (when Plaintiff began to suspect improper motives related to the University's position that Plaintiff was not eligible for certain transfers, waivers, or PLAs and fell short of her degree requirements). Plaintiff "was in possession of such facts, thereby triggering h[er] duty to investigate," as early as 2005 and no later than 2012. *See Alexander*, 162 Cal. Rptr. 3d at 629; *see also Brawner v. Educ. Mgmt. Corp.*, 513 F. App'x 148, 151 & n.2 (3d Cir. 2013) (stating plaintiff's claim for tolling until "discovery" in 2011 "[wa]s belied by his knowledge that something was amiss long before 2011 . . . . As demonstrated by his complaint and other filings, he knew he was injured and made repeated inquiries of the various defendants") (quotation omitted). The facts alleged demonstrate that Plaintiff had sufficient knowledge of the facts in this case that she believed she could assert legal claims as early as 2003, when she began seeking out attorneys. Plaintiff's choice to pursue other dispute resolution alternatives, after she was warned that a favorable outcome was unlikely, does not eliminate that she possessed knowledge of the necessary facts underlying her

18cv1544-WQH-KSC

claims no later than 2012. *See id.* ("[I]t is the discovery of facts, not their legal significance, that starts the statute.").

"The allegations in the complaint . . . can support only one reasonable conclusion": that Plaintiff consciously chose not to pursue a lawsuit several times for various reasons, none of which demonstrate a lack of knowledge of underlying facts at those times. *See Alexander*, 162 Cal. Rptr. 3d at 630. The facts alleged demonstrate that in this case, Plaintiff "learn[ed] the facts necessary to bring the cause of action" and chose not to "file suit [once] [s]he d[id]." *See Norgart*, 981 P.2d at 88–89. The facts alleged do not demonstrate an "inability to have made earlier discovery despite reasonable diligence." *See Fox*, 110 P.3d at 921. "[T]he assertions of the complaint, read with the required liberality, [do] not permit [Plaintiff] to prove" that she is entitled to rely on the delayed discovery doctrine for her claims in this case. *See Jablon*, 614 F.2d at 682.

Equitable tolling can extend the statute of limitations periods relevant to Plaintiff's claims only if she "ha[d] several legal remedies and, reasonably and in good faith, pursue[d] one." *See McDonald*, 194 P.3d at 1031. Equitable estoppel applies only if conduct by Defendants "induced" Plaintiff "into forbearing suit within the applicable limitations period," which "amount[ed] to a misrepresentation bearing on the necessity of bringing a timely suit" beyond "mere denial of *legal liability*." *See Lantzy*, 73 P.3d at 532, 533 n.18. The facts alleged demonstrate that Plaintiff was aware she could not obtain her desired remedy through the University's internal procedures as early as 2005 (when "UOP did nothing," a result "Gayle hoped to appeal"), and no later than 2012 (when "UOP stopped responding" in May and Plaintiff began to suspect foul play in October). *See* ECF No. 11 at 58; ECF No. 11-2 at 31; *compare McDonald*, 194 P.3d at 1035 ("The procedures provided for by California Code of Regulations, title 5, section 59300 et seq. . . . afford a complainant and the community college district a full opportunity to formally or informally resolve a dispute in a way that will, in many cases, minimize or eliminate entirely the need for further judicial proceedings. Equitable tolling *during pursuit of this internal remedy* affords all the benefits that we have generally recognized justify tolling.") (emphasis

added). The facts alleged demonstrate that Plaintiff was aware of the University's consistent position that she had no legal remedies. The Court finds that the facts alleged do not demonstrate Plaintiff "ha[d] several legal remedies and, reasonably and in good faith, pursue[d] one," or "timely notice, [or] lack of prejudice, to the defendant." *See McDonald*, 194 P.3d 1031, 1033. Any allegations that Defendants incorrectly classified Plaintiff's dispute as nonlegal do not demonstrate a misrepresentation by Defendants bearing on her need to timely file suit beyond "mere denial of legal liability." *See Lantzy*, 73 P.3d at 532, 533 n.18; *compare Lukovsky*, 535 F.3d at 1052 ("[C]ontending [the] stated reason for termination was a ruse to conceal the plan to fire [Plaintiff] because of his age . . . merges the substantive wrong with the tolling doctrine. It implies that a defendant is guilty of fraudulent concealment unless it tells the plaintiff, 'We're firing you because of your age.' It would eliminate the statute of limitations.") (quotations omitted). "[T]he assertions of the complaint, read with the required liberality," do not permit Plaintiff to prove that she is entitled to rely on equitable tolling or equitable estoppel in this case. *See Jablon*, 614 F.2d at 682.

The statute of limitations analysis does not change based on events occurring in 2014, 2015, or 2016. Plaintiff alleges that on April 14, 2014, she contacted attorney Janel Sobel for "help submitting a mediation claim based on legal reasons." (ECF No. 11-2 at 70). On May 29, 2014, Sobel sent a letter to the University on Plaintiff's behalf "assert[ing] . . . common law tort claims" and requesting mediation. *Id.* at 71. On July 8, 2014, Sobel received an email from the University stating:

> Although the University maintains that there is no basis for a legal claim, it is willing to consider the possibility of voluntary participation in mediation. Before we reach that point, however, I think it would be useful to discuss the basis for your client's claims and determine whether the parties can reach resolution in advance of mediation and/or arbitration.

(ECF No. 31-1 at 23). On October 9, 2014, Sobel sent an email to the University setting forth in detail Plaintiff's claims of the University's miscalculations and wrongful 2005-era denial of transfers, waivers, or PLAs for certain of Plaintiff's classes, professional

experiences, and military experiences from 2005 or earlier. *Id.* at 27–31. The email requests conferral of Plaintiff's degree "as of March 23, 2007" and states, "If the school has a choice to accept or reject a credit, Gayle is hoping (and expecting) they will do so with fairness and in the exercise of their discretion to *grant* them. . . ." *Id.* at 27 (emphasis added). Plaintiff alleges,

> After a year of back and forth attorney emails, discussions, and an informal meeting late 2014, UOP agreed to do an unpaid review of Gayle's contract and classes which took UOP until the end of 2015 to complete. End of 2015, UOP determined Gayle had an excess of units and earned her degree by 2005, within contract timelines.

ECF No. 11 at 8. In order to bring her claims that the University failed to grant Plaintiff her degree when she had earned it, Plaintiff did not need to know that the University would later choose to grant Plaintiff certain transfers, waivers, or PLAs it had previously denied, and confer her degree. *See Brawner*, 513 F. App'x at 151 & n.2 ("[K]nowledge of every fact necessary to *prevail* on the claim is not required . . . . Brawner likely could have obtained these documents, to the extent that they were relevant, through the civil litigation discovery process after commencing a timely suit.") (quotation omitted). The allegation that in 2015 Plaintiff first obtained loan information, revealing that the University told Plaintiff's lender she had graduated, does not plausibly demonstrate an inability to discover the necessary facts in this case, in part because Plaintiff also alleges that she was able to access her loan information and discover changes to her loan due date and interest accrual in 2005. *See* ECF No. 11 at 8 ("Gayle alle[]ges . . . fraud perpetrated by UOP in 2005 when UOP told Gayle's lender she graduated . . . while telling Gayle refinancing her loans set accrual of interest.").

The Court finds that the relevant statutes of limitations began to accrue as early as 2005, and no later than 2012. The longest relevant statute of limitations is four years. Plaintiff initiated this action by filing a complaint on July 9, 2018. *See* ECF No. 1. Delayed discovery, equitable tolling, and equitable estoppel do not apply in this case. Plaintiff's claims are dismissed for failure to comply with any relevant statute of limitations. In

addition, as explained below, Plaintiff's claims are dismissed for failure to state a claim within the meaning of the applicable pleading standards.

## III.   ADEQUACY OF PLEADINGS

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." In order to state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quotation omitted).

Stating a claim for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[A]ccepting all factual allegations in the complaint as true and drawing 'all reasonable inferences in favor of the nonmoving party,'" the plaintiff's "allegations must 'plausibly suggest an entitlement to relief.'" *Gregg v. Haw., Dep't of Pub. Safety*, 870 F.3d 883, 886–87 (9th Cir. 2017) (first quoting *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); then quoting *Iqbal*, 556 U.S. at 681). Plausibility requires the plaintiff to allege "facts tending to exclude the possibility" that the defendant's "alternative explanation is true." *Eclectic Props. E. v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014). "[E]stablishing only a 'possible' entitlement to relief . . . [does] not support further proceedings." *Id.*; *see also In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1105 (9th Cir. 2013) ("To render their explanation plausible, plaintiffs must do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation."). Courts must liberally construe the pleadings of a pro se litigant. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). "However, a liberal interpretation . . . may not supply essential elements of the claim that

were not initially pled." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### A. Fraud and Misrepresentation Claims

Defendants assert that Plaintiff fails to state a cognizable claim for fraud because the alleged facts do not demonstrate that Plaintiff completed her coursework in 2002. Defendants assert that Plaintiff's exhibits show her attempting to transfer academic credits for coursework that she completed at other institutions from 2003 to 2011. Defendants asserts that Plaintiff fails to allege facts demonstrating reliance on, or loss from, the 2015 conferral of the degree with a 2005 date.

Plaintiff contends that the Complaint "more than plausibly states entitlement to relief to each claim." (ECF No. 31 at 17). Plaintiff asserts that Defendants knowingly lied and concealed her degree date. Plaintiff asserts that she suffered out of pocket loss from the 2005 graduation date because her loans "cannot be relieved in bankruptcy." *Id.* at 8. Plaintiff asserts that she "was eligible for the borrower defense to repayment because she was misled about loans." *Id.*

The elements of a claim for fraud are: "(1) a misrepresentation, which includes a concealment or nondisclosure; (2) knowledge of the falsity of the misrepresentation, i.e., scienter; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damages." *Cadlo v. Owens-Illinois, Inc.*, 23 Cal. Rptr. 3d 1, 5 (Ct. App. 2004) (citing *Small v. Fritz Cos., Inc.*, 65 P.3d 1255, 1258 (Cal. 2003)). "The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance. . . . In both causes of action, the plaintiff must plead that he or she actually relied on the misrepresentation." *Id.* (first citing *Small*, 65 P.3d at 1258, then citing *Mirkin v. Wasserman*, 858 P.2d 568, 570 (Cal. 1993)). "It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirement." *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003); *see also Lorenz v. Sauer*, 807 F.2d 1509, 1511–12 (9th Cir. 1987) ("Under California law, negligent misrepresentation is a species of actual fraud. . . ."). Rule

9(b) requires that a complaint "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) "requires . . . an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (averments of fraud must be accompanied by "the who, what, when, where, and how of the misconduct charged") (quotation omitted). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citations and quotations omitted).

In this case, the facts alleged to support Plaintiff's fraud and misrepresentation fall into the following categories: (1) statements regarding Plaintiff's degree progress and her ability to obtain credit transfers, waivers, or PLAs; (2) the 2015 conferral of her degree with a 2005 date (3) a 2011 phone call during which Plaintiff was told she had a degree; (4) statements to Plaintiff and her lender regarding her loans; and (5) statements regarding the quality of education and academic services.

Plaintiff alleges that she relied on statements by various individuals that she could save time and money by receiving credit for her previously completed classes, professional experience, and military experience. Plaintiff alleges that "UOP estimated Gayle could finish in about 2 years," and that a "UOP counselor . . . assured Gayle that her classes from reputable schools would transfer, reducing [tuition] amount by about $8,460. . . ." (ECF No. 11 at 5, 30). Plaintiff alleges that "there was no go[-]to contact who would put in writing, specifics regarding what UOP verbally said they would accept as transfer units," and that "UOP refused to put any pre-approved advisor assertions about specific transfer unit agreements in writing." *Id.* at 32, 55. Plaintiff alleges that she was "refused transfer classes enrollment counselor said would transfer," that "UOP prevented competition by concealing what transfer units they would accept," and that "UOP changed that

requirement and said only UOP upper division classes would work." *Id.* at 39, 40, 55. Plaintiff alleges that "[c]ounselors made errors, ambiguous changes to credit awards," that "UOP wrongly stated 8.99 units were needed . . . transfers accepted . . . would have resulted in 6.99 units," and that "Gayle was awarded 8 military units (should have been 9 as awarded later) but UOP did not reduce open electives by 8." (ECF No. 11 at 32; ECF No. 11-2 at 20). Plaintiff alleges that her units were not correctly applied until 2015. *See* ECF 11-2 at 23, 50. Plaintiff alleges that she paid $29,119.25 for tuition, and $45,000 for incidentals, books, and accrued loan interest. (ECF No. 11-2 at 11ECF No. 11 at 5).

Plaintiff includes policy excerpts stating that students have the opportunity to attempt to satisfy certain requirements with previously completed classes, professional experience, and military experience, by applying for transfers, waivers, and PLAs. *See, e.g.*, ECF No. 11-2 at 37, 51, 55 ("Prior Learning Assessment is a process that *may* save students time and money in completing a degree program. . . . . Students in this program *may* waive a maximum of 9 credits from their required course of study . . . . In order to be *granted* a waiver . . . . Transfer credit will be *evaluated* according to University policies and accepted *subject to the approval* of the University's Central Office of Admissions & Evaluation. . . . *Any preliminary reviews by campus personnel are unofficial and not binding, and subject to change. . . .*") (emphases added). Plaintiff includes an excerpt from the enrollment agreement that states, "*Assuming* all 120 required credits are completed at University of Phoenix, you will be responsible for thirty-seven thousand, nine hundred eighty-eight dollars ($37,988). Cost *may* be reduced by transfer of college credits from other regionally accredited institutions, the successful completion of national testing programs (CLEP, DANTES, or ACT/PEP) and Assessment of Prior Learning. . . ." *Id.* at 12 (emphases added).

The facts alleged support the inference that Plaintiff was told she would save time and money because she was eligible for transfers, waivers, or PLAs. The facts alleged support the inference that Plaintiff received materials setting forth a possibility of transfers, waivers, and PLAs to save time and money, contingent upon the approval process. The

18cv1544-WQH-KSC

facts alleged support the inference that Plaintiff requested written statements in advance of formal approval for transfer of particular credits. The facts alleged support the inference that her request was denied. The facts alleged do not plausibly support the inference that Plaintiff justifiably relied on any statements guaranteeing that she would save time and money based on transfers, waivers, or PLAs. In addition, the facts alleged further support the inference that there was a two-unit error related to the number of Plaintiff's transferred credits that was later corrected. The facts alleged support the inference that Plaintiff was told until 2015 that she was more than two units short of satisfying her degree requirements. The facts alleged support the inference that before 2015, Plaintiff was not granted certain transfers, waivers, or PLAs that she believed, if granted, would satisfy her degree requirements. The facts alleged do not plausibly support the inference that Plaintiff met the degree requirements before 2015, when she ultimately obtained approval for the transfers, waivers, or PLAs. The facts alleged do not plausibly support an inference that any statement that Plaintiff had not fulfilled all degree requirements, before 2015, was false.

Plaintiff alleges that that "UOP falsely stated UOP conferred degree earned in 2005, instead of the true date of 2015, when in fact, the degree was earned prior to 2003." *Id.* at 9. Plaintiff alleges that "no classes were needed as for 2015-degree awarded as all work was complete prior to 2005 and in UOP's possession," and that "Gayle finished UOP requirements in 2002." *Id.* at 39, 41. The facts alleged plausibly support the inference that Plaintiff took certain classes before 2015, for which she received credit in 2015. There are no facts alleged to support the inference that Plaintiff relied on the 2005 date of the degree she received in 2015, or that such reliance has caused Plaintiff injury. Plaintiff fails to state a claim for fraud or misrepresentation based on the 2005 date of her degree.

Plaintiff alleges that "[i]n 2011, UOP/Apollo called Gayle . . . to join UOP master's program. On the phone, UOP/Apollo asserted Gayle had earned UOP BS degree. Gayle explained the judicial authority of UOP refused to validate that earned credential unless Gayle paid UOP more money and duplicated classes. . . . Gayle reenrolled based on the

representation she had earned the degree . . . ." (ECF No. 11 at 6). The facts alleged give rise to a plausible inference that a caller told Plaintiff that she had a degree and was eligible for a master's program. The facts alleged give rise to a plausible inference that Plaintiff did not possess a degree and was not eligible for the master's program at the time of the call. The facts alleged give rise to a plausible inference that Plaintiff informed the caller that she had not been granted a degree. The facts alleged do not give rise to a plausible inference that Plaintiff reasonably relied on the caller's statements under the circumstances. Plaintiff fails to state a claim for fraud or misrepresentation based on statements allegedly made during the 2011 telephone call.

Plaintiff alleges that in 2015 she learned that Defendants falsely told her lender that she graduated in 2005. Plaintiff references a schedule labeled "Summary Of All Your Direct Consolidation Loans." (ECF No. 11-2 at 26). The schedule shows two loans and, in the column "Loan Type," indicates "Subsidized Consolidation" and "Unsubsidized Consolidation" for the loans. *Id.* In the column "Repayment Plan(s) if Selected," the schedule indicates "Graduated" for both loans. *Id.* The term "Repayment Plans" is defined below the schedule: "Your choice of repayment plans includes: Standard plan . . . Extended plan . . . *Graduated plan* (smaller payment at first and larger payments later), and Income Contingent Repayment (ICR) plan . . . .)." *Id.* (emphasis added). Plaintiff alleges that Defendants' report to her lender caused her loan to become due and caused interest to begin accruing. Plaintiff alleges that Defendants told her the loans came due and interest began accruing because she consolidated or refinanced her loans. Plaintiff alleges that Defendants were motivated to report her as graduated to improve student default rates and maintain eligibility for Title IV funding. The facts alleged give rise to the plausible inference that Plaintiff consolidated her loans and selected a graduated repayment plan, as set forth in information accessible to Plaintiff at all times. There are no alleged "facts tending to exclude the possibility" that Plaintiff selected a "graduated" loan repayment plan, and that her loans became due and interest began accruing because she consolidated or refinanced her loans. *See Eclectic*, 751 F.3d at 996–97 ("[E]stablishing only a 'possible'

entitlement to relief . . . [does] not support further proceedings."). Plaintiff fails to allege facts showing that the University misrepresented the cause of her loan due date and interest accrual. Plaintiff fails to allege facts demonstrating reliance on statements allegedly made to Plaintiff's lender. *See Shapiro v. Abraham Lincoln Univ. Sch. of Law*, No. CV1003177MMMFMOX, 2011 WL 13272256, at *14 (C.D. Cal. May 4, 2011) ("Absent an allegation that plaintiff personally heard or read [defendants'] allegedly false statements to the State Bar and relied on them, the amended complaint does not adequately plead reliance."), *aff'd*, 648 F. App'x 713 (9th Cir. 2016).

Plaintiff alleges that she expected to receive academic advice to facilitate these time and cost savings, based on Defendants' statements of "academic quality, service, excellence, and 'convenience to the working student,' offering 'simplicity for working adults,['] to 'help students balance education and life.'" (ECF No. 11 at 28). Plaintiff alleges that "UOP advisors did not have the necessary knowledge, experience, nor were they specially qualified to advise Gayle to degree completion. UOP did not answer questions to solutions, negated their own directions contradicting written policies, and demonstrated no accountability to the advice offered or services required." *Id.* at 32. Plaintiff also alleges that she relied on the University's statements of high-quality education and increased earning potential, and that she received neither. Alleged statements regarding the quality of academic advising, the quality of education, the program's convenience and simplicity for working adults, or increased earning potential, are not actionable representations of fact for purposes of fraud or misrepresentation. *See, e.g., Consumer Advocates v. Echostar Satellite Corp.*, 8 Cal. Rptr. 3d 22, 29 & n.3 (Ct. App. 2003) ("'Crystal clear' and 'CD quality' are not factual representations that a given standard is met. Instead, they are boasts, all-but-meaningless superlatives . . . which no reasonable consumer would take as anything more weighty than an advertising slogan. The statements are akin to 'mere puffing,' which under long-standing law cannot support liability in tort.") (citing *Hauter v. Zogarts*, 534 P.2d 377 (Cal. 1975)).

Plaintiff fails to allege facts demonstrating that she is entitled to relief on claims of fraud or misrepresentation.

## B. Breach of Contract

Defendants assert that Plaintiff fails to allege facts showing that the disclosure agreement was breached, or that the breach caused her to suffer damages. Defendants assert that Plaintiff's alleged facts do not demonstrate that she completed her degree requirements in 2002. Defendants assert that Plaintiff's exhibits show that Plaintiff failed to obtain her degree in 2002 and requested a degree conferral date of 2005 or 2007 based on transferred credits. Defendants assert that Plaintiff's degree was properly conferred in 2015 with a 2005 date, after significant efforts were made to accommodate Plaintiff's requests and accept various transfer credits.

Plaintiff asserts that the "contract was extended 2007, 2011, 2012, 2014, and 2015, each time creating an obligation for the University to perform." (ECF No. 31 at 8). Plaintiff asserts that "UOP/Apollo changed policies without notification to Gayle's detriment" and "failed to timely confer and grant Gayle's degree per their policy." (ECF No. 45 at 8). Plaintiff asserts, "In 2012, UOP waived some repeats (exact content) but by their own policy, deemed other repeat classes ineligible to be waived even though Gayle got an A, so UOP in 2014 and early 2015 was still requiring 6 more classes." *Id.*

"A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 70 Cal. Rptr. 3d 667, 679 (Ct. App. 2008) (citation omitted). "[T]he basic legal relationship between a student and a private university is contractual in nature." *Kashmiri v. Regents of Univ. of Cal.*, 67 Cal. Rptr. 3d 635, 645–46 (Ct. App. 2007). However, "[i]t is well settled that in actions challenging the academic decision of a private university regarding a student's qualifications for a degree, we exercise a highly deferential and limited standard of review." *Banks v. Dominican Coll.*, 42 Cal. Rptr. 2d 110, 114 (Ct. App. 1995); *see also Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 817

(9th Cir. 1999) ("[C]ourts generally are ill-equipped, as compared with experienced educators, to determine whether a student meets a university's reasonable standards for academic and professional achievement."). Courts apply contract law less "rigidly . . . in actions challenging the academic decision of a university or a student's qualifications for a degree" or "general promises or expectations," as compared to "specific promise[s] to provide an educational service, such as a failure to offer any classes or a failure to deliver a promised number of hours of instruction." *Kashmiri*, 67 Cal. Rptr. 3d at 646–47. "[N]ot all statements" in publications by a university "amount to contractual obligations. . . . [T]he contractual obligations imposed by the language in catalogues center around what is reasonable." *Id.* at 650 (quotation omitted).

In this case, the facts alleged to support Plaintiff's breach of contract claim fall into the following categories: (1) that Plaintiff had to pay fees and take classes that were not required; (2) that Plaintiff was entitled to certain transfers, waivers, and PLAs she did not receive; (3) that Plaintiff was provided with low-quality academic advice and a degree that took longer, cost more, and added less value than she was promised; and (4) that the dispute resolution process was unavailable to her and changed.

Plaintiff alleges that she was not required "to enter a new program or take more UOP classes if she finished units prior to 2006-07" because she "had less than 10 units to complete in 2002." (ECF No. 11-2 at 24). Plaintiff alleges that "UOP changed contract terms in 2005 and cancelled the exception policy . . . which subjected Gayle to curriculum changes, and created the need for Gayle to take 2 more UOP classes that could only be satisfied at UOP . . . . This was unacceptable to Gayle . . . ." *Id.* Plaintiff alleges that in "2005, UOP got 3 transcripts. UOP took no action. . . . Gayle could not get anyone at UOP to speak to her since she refused to give UOP even more money for unnecessary classes." *Id.* at 25. Plaintiff alleges she "was active at UOP and working with academic counselor and UOP made Gayle pay enrollment fee . . . despite policy stating no fee would be required if program course work was complete which was the case." *Id.* at 39.

Plaintiff provides an enrollment agreement stating that "[t]his disclosure agreement is contingent upon continuous enrollment . . . . If you become inactive in the program for one year or more, you must complete a new enrollment agreement and are subject to any curriculum or degree requirement changes or fee changes in effect at the time you re-enter. . . ." (ECF No. 11-2 at 12). Plaintiff provides additional policies stating:

> Undergraduate students who lack no more than 10 credits . . . and will be able to complete all degree requirements within eight years (seven year deadline plus a one year extension) from the original start date *may re-enroll* in their original program/version prior to reentering the University are not required to complete *new courses* that may be required in a new program/version. . . . Students who have been inactive in the program for one year or more are required to complete a *new application and registration form*. . . . A second *application fee* is not required. Students who withdraw for one year or more are subject to any curriculum or degree requirement changes in effect at the time they re-enter.

*Id.* at 24. The Court finds that the facts alleged support a plausible inference that Plaintiff had a contract right to avoid paying an additional application fee and a contract right to reenroll. The facts alleged support a plausible inference that Plaintiff was instructed to reenroll and pay an enrollment fee. The facts alleged do not support a plausible inference that Plaintiff had a contract right to avoid reenrollment or enrollment fees.

The facts alleged support a plausible inference that Plaintiff had a contract right to avoid complying with new program requirements. The facts alleged support a plausible inference that Plaintiff was told she was required to take certain classes she believed were not required, in part because she believed she was entitled to certain transfers, waivers, or PLAs. The facts alleged support a plausible inference that Plaintiff declined to pay for or take the classes she believed were not required. The facts alleged support a plausible inference that Plaintiff was not granted a degree because she had not satisfied her degree requirements. No alleged facts demonstrate that Plaintiff's original degree requirements were satisfied at the time Defendants refused to confer Plaintiff a degree. No alleged facts demonstrate "facts tending to exclude the possibility" that Defendants' "alternative

24

explanation"—that Plaintiff had not satisfied the requirements of the original degree program—"is true." *See Eclectic*, 751 F.3d at 996–97.

Taking as true Plaintiff's allegations that advisors refused to provide her with written approvals in advance, and that the express policy provisions described the possibility of transfers, waivers, or PLAs with conditional language, Plaintiff fails to demonstrate a contract right to be granted any particular transfers, waivers, or PLAs. *See, e.g.*, ECF No. 11-2 at 37, 51, 55) ("[A] process that *may* save students time and money . . . . A maximum of 30 Prior Learning credits *may* be earned . . . . [T]he Office of Admissions and Evaluation [will] review the course waiver *request*. . . . Transfer credit will be *evaluated* according to University policies and accepted *subject to the approval* of the University's Central Office of Admissions & Evaluation. . . . *Any preliminary reviews by campus personnel are unofficial and not binding, and subject to change*. . . .") (emphases added); (ECF No. 11-2 at 12) ("A total of 120 credit hours must be satisfied to complete the program. . . . Cost *may* be reduced by transfer of college credits . . . national testing programs . . . and Assessment of Prior Learning. . . ."). As such, Plaintiff fails to allege the existence of a contract right to obtain transfers, waivers, PLAs, or the conferral of her degree, on an earlier date in this case. *Cf. Kashmiri*, 67 Cal. Rptr. 3d at 653 ("[W]e conclude that it was reasonable for students to believe that the general statement that fees could be changed did not apply to the PDF, which, according to the statements set forth by the University, would remain the same for the duration of that student's enrollment in the professional program.").

Any allegations that a contract was formed by the University's promises to provide a convenient, efficient, high-quality education at a low price, or promises to provide high-quality academic advisors, amount to "general promises or expectations" that do not reasonably constitute "specific promise[s] to provide an educational service" or demonstrate a meeting of the minds or mutual intent to contract. *See Kashmiri*, 67 Cal. Rptr. 3d at 647.

18cv1544-WQH-KSC

Plaintiff alleges that her "original online 340-page catalog for 2001-2002 has no detail to address a dispute where a conflict of interest applies and requires a 3rd party to help solve. . . ." (ECF No. 11-2 at 59). Plaintiff alleges that "UOP changed dispute process . . . effective July 1, 2012 and offered mediation . . . ." *Id.* Plaintiff includes a document excerpt labeled "Mediation" stating, "[A]ll parties are encouraged to participate in a formal mediation session facilitated by a professional, neutral mediator. Mediation is not mandatory but is strongly encouraged as an effective way to resolve disputes." *Id.* at 60. The facts alleged plausibly support the inference that the University made mediation an optional dispute resolution process. The facts alleged do not plausibly support an inference that Plaintiff had a contractual right to mediate her disputes in this case.

Plaintiff fails to allege facts supporting a plausible inference that any contract rights regarding reenrollment, fees, or program requirement changes, were breached in this case.

### C. Breach of Duty Claims

Defendants assert that there is no fiduciary or other special duty owed to Plaintiff in this case. Defendants assert that the Higher Education Act (HEA) provides no private right of action and does not give rise to a fiduciary duty owed to Plaintiff.

Plaintiff contends a fiduciary duty exists in this case based on federal funding, Title IV, and the HEA, as well as "the signed disclosure based on UOP's pledge to [the Higher Learning Commission]." (ECF No. 45 at 10). Plaintiff asserts, "There is an affirmative duty when a student reasonably relies on some act by the college that has a tangential relationship to the college's overall mission." *Id.* at 13 (quoting *Webb v. Univ. of Utah*, 125 P.3d 906, 912 (Utah 2005) ("[A] special relationship may be created . . . in connection with a college course assignment . . . .").

"Whether a fiduciary duty exists is generally a question of law." *Amtower v. Photon Dynamics, Inc.*, 71 Cal. Rptr. 3d 361, 377 (Ct. App. 2008) (citations omitted). "[T]he normal relationship between a student and the university and its agents is contractual. . . . The mere placing of a trust in another person does not create a fiduciary relationship." *Zumbrun v. Univ. of S. Cal.*, 101 Cal. Rptr. 499, 506 (Ct. App. 1972); *see also Ernest v.*

*Univ. of Phoenix*, No. 08-CV-2363-H (POR), 2010 WL 11508435, at *5 (S.D. Cal. July 27, 2010) ("The allegation that universities, university officials, directors, and professors have a fiduciary relationship to students because they extend guidance in shaping careers and provide direction to students does not give rise to a fiduciary duty."); *Raiser v. Ventura Coll. of Law*, No. CV0900254RGKAGRX, 2009 WL 10692054, at *6 (C.D. Cal. July 9, 2009) ("VCL does not owe a fiduciary duty to Plaintiff."). Courts have recognized that "universities owe a duty to protect students from foreseeable violence during curricular activities." *Regents of Univ. of Cal. v. Superior Court*, 413 P.3d 656, 674 (Cal. 2018) (collecting cases regarding university duties to students).

In this case, the Complaint alleges that Plaintiff "had to establish reliance on the judgment and advice from UOP, creating a dependence reasonably requiring trust and confidence since UOP had the governing power and was backed by channels of U.S Govt through accreditation and responsibilities with government loan funds." (ECF No. 11 at 51). The Court finds that the facts alleged in the Complaint demonstrate a contractual, "normal relationship" between Plaintiff and Defendants. *See Zumbrun*, 101 Cal. Rptr. at 506. *Webb* does not persuade the Court to the contrary. *See* 125 P.3d at 911 ("University personnel do not generally have a special relationship with students."), *overruled by Cope v. Utah Valley State Coll.*, 342 P.3d 243, 251–53 (Utah 2014) (noting that *Webb* failed to "first determine whether a plaintiff's theory of liability rests upon a public duty" before "examin[ing] whether a special relationship exists"). Plaintiff was not owed a fiduciary duty in this case and fails to state a claim based on breach of a fiduciary duty.

The Court finds no private right of action entitles Plaintiff to a remedy for breach of any HEA duty in this case. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) ("There is no express right of action under the HEA except for suits brought by or against the Secretary of Education.") (citing 20 U.S.C. § 1082(a)(2)); *see also McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1225 (11th Cir. 2002) ("[N]early every court to consider the issue in the last twenty-five years has determined that there is no express or implied private right of action to enforce any of the HEA's provisions."); *Labickas v. Ark.*

*State Univ.*, 78 F.3d 333, 334 (8th Cir. 1996) ("We conclude that no private right of action is implied under the HEA for student borrowers."); *L'ggrke v. Benkula*, 966 F.2d 1346, 1348 (10th Cir. 1992) (same); *Bernstein v. Apollo Grp., Inc.*, No. 5:13-CV-01701-LHK, 2014 WL 854834, at *5 (N.D. Cal. Feb. 28, 2014) ("There is no private right of action under this statute.").[2]

## D. Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants asset that Plaintiff fails to demonstrate she was owed a fiduciary duty of care, precluding her from recovery for breach of the implied covenant of good faith and fair dealing. Defendants assert that Plaintiff fails to allege facts showing that conduct by the University frustrated her rights under a contract between her and the University.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937 (9th Cir. 1999) (quoting *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710, 726 (Cal. 1992)). That duty is known as the covenant of good faith and fair dealing and requires "that neither party . . . do anything which will injure the right of the other to receive the benefits of the agreement." *Andrews v. Mobile Aire Estates*, 22 Cal. Rptr. 3d 832, 839 (Ct. App. 2005) (quotation omitted). "The implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live v. City of Pasadena*, 8 Cal. Rptr. 3d 233, 237 (Ct. App. 2004) (quotation omitted). Under California law, "[a] cause of action for breach of the implied covenant of good faith and fair dealing is premised on the breach of a specific contractual obligation." *Innovative Bus. P'ships, Inc. v. Inland Ctys. Reg'l Ctr., Inc.*, 123 Cal. Rptr. 3d 525, 532 (Ct. App. 2011). "A cause of action for tortious breach of the covenant of good faith and

---

[2] In addition, the facts alleged regarding HEA compliance fail to state a claim for breach of contract. *Cf. Long v. Howard Univ.*, 512 F. Supp. 2d 1, 24–25 (D.D.C. 2007) ("The mere existence and applicability of federal discrimination laws does not create an additional common law contract claim to supplement a claim directly under those laws."), *aff'd*, 550 F.3d 21 (D.C. Cir. 2008).

18cv1544-WQH-KSC

fair dealing requires the existence and breach of an enforceable contract as well as an independent tort." *Id.* at 533; *see also Kruse v. Bank of Am.*, 248 Cal. Rptr. 217, 228 (Ct. App. 1988) ("The inherent precondition to such a tort claim is the existence and breach of an enforceable contract."). In addition, "[g]enerally, no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.'" *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) (quoting *Mitsui Mfrs. Bank v. Superior Court*, 260 Cal. Rptr. 793, 796 (Ct. App. 1989).

In this case, the Complaint alleges that "UOP's promises to the US government should have ensured a covenant of good faith and fair dealing, and a fiduciary duty." (ECF No. 11 at 9). The Complaint alleges, "UOP demonstrated lack of intent to perform and violated a duty to act fairly and in good faith and deceived Gayle to enroll repeatedly and frustrated her purpose. UOP's actions unfairly interfered with Gayle's right to receive substantiation of education, a material contract benefit." *Id.* at 74. The Court concluded above that Plaintiff has failed to allege facts to demonstrate breach of contract. Accordingly, the Court finds that Plaintiff fails to allege facts sufficient to show that Defendants injured her right to receive the benefits of the agreement. Plaintiff fails to allege facts to demonstrate the existence of a fiduciary or independent tort duty. The Complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing.

### E. Intentional Interference with Contractual Relations and Intentional Interference with Prospective Economic Relations Claims

Defendants contend that intentional interference with contractual relations requires a contract with a third party; similarly, that intentional interference with prospective economic relations requires an economic relationship with a third party. Defendants assert that Plaintiff states no claim because she references a contract and economic relationship between herself and Defendants, not a third party. Plaintiff asserts, "The economic relationship at issue involves a 3rd party . . . . UOP/Apollo fraudulently interfered with

Gayle's loan which led to additional defendant concealment. The economic relationship is between Plaintiff, and the University and the lender for a tort claim of fraud." (ECF No. 31 at 18).

The elements of intentional interference with contractual relations are:

(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

*Mintz v. Blue Cross of Cal.*, 92 Cal. Rptr. 3d 422, 429 (Ct. App. 2009) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 590 (Cal. 1990)). "[T]he tort cause of action for interference with contract does not lie against a party to the contract." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 459 (Cal. 1994).

In this case, the Complaint alleges that "UOP improperly interfere[d] and prevent[ed] contract performance" by providing "bad advise and misdirection on academic courses of study." (ECF No. 11 at 63–64). The Complaint alleges that the University "totally prevented performance for 13 years and frustrated contract purpose by making it impossible for Gayle to meet requirements to get her earned degree by continuously moving the goal posts back." *Id.* The facts alleged reference the contract between Plaintiff and Defendants and conduct attributable to Defendants disrupting that contract. Any allegations referencing Plaintiff's loan are vague and unsupported by facts to plausibly infer that Defendants engaged in "intentional acts designed to induce a breach or disruption" of the loan contract, or infer that her loan contract was "actual[ly] breach[ed] or disrupt[ed]." *See Mintz*, 92 Cal. Rptr. 3d at 429. Plaintiff fails to allege facts showing plausible entitlement to relief on a claim of intentional interference with contract relations.

The elements for a claim of intentional interference with prospective economic advantage are:

(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional acts designed to

30

disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's acts.

*Reeves v. Hanlon*, 95 P.3d 513, 520 (Cal. 2004). "[A]n essential element of the tort of intentional interference with prospective business advantage is the existence of a business relationship with which the tortfeasor interfered. . . . Although this need not be a contractual relationship, an existing relationship is required." *Roth v. Rhodes*, 30 Cal. Rptr. 2d 706, 715 (Ct. App. 1994) ("Roth cannot have an existing relationship with these speculative 'future patients'"); *see also Raiser*, 2009 WL 10692054, at *5 (dismissing former student's claim against law school for intentional interference with prospective economic opportunity because the alleged relationship and any resulting economic benefit were speculative).

In this case, the Complaint alleges that "[a]n accredited degree would have resulted in the benefit of job earnings for a college education for Gayle. . . . UOP's Administrative process and services were so slow, UOP decreased Gayle's opportunity." (ECF No. 11 at 65–66). The facts alleged reference general future economic benefits. The facts alleged are speculative and fail to state a claim for intentional interference with prospective economic relations. *See Roth*, 30 Cal. Rptr. 2d at 715. Any allegations related to an economic relationship with Plaintiff's lender do not infer a "probab[le ] future economic benefit to the plaintiff" within the meaning of this cause of action. *See Reeves*, 95 P.3d 520. The facts alleged do not support the inference of "actual disruption of the relationship" with Plaintiff's lender. *Id.* Plaintiff fails to allege facts demonstrating she is entitled to relief on a claim of intentional interference with prospective economic relations.

**F. Extortion and Threats Claims**

Defendants contend that Plaintiff's extortion claim fails because the claim is premised upon 18 U.S.C. § 1951, which has no private right of action. Plaintiff asserts, "Extortion elements are relevant to the fraud claim." (ECF No. 31 at 18).

The Complaint references chapter 41 of Title 18 of the U.S. Code, which corresponds to 18 U.S.C. §§ 871–80. The provisions at §§ 880 and 876 set forth penalties

for crimes related to extortion and threats. "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 64 (1986); *see also Wisdom v. First Midwest Bank*, 167 F.3d 402, 409 (8th Cir. 1999) ("[N]either the statutory language of 18 U.S.C. § 1951 nor its legislative history reflect an intent by Congress to create a private right of action."). The Court finds that Plaintiff fails to state a claim for extortion or threats based on the federal statutes in the Complaint.

California courts recognize extortion as civil tort cause of action for "moneys obtained by duress, a form of fraud." *Fuhrman v. Cal. Satellite Sys., Inc.*, 231 Cal. Rptr. 113, 122 (Ct. App. 1986) (citations omitted), *disapproved on other grounds by Silberg v. Anderson*, 786 P.2d 365 (Cal. 1990); *see also Platino Records, Inc. v. Univision Music*, LLC, No. B212336, 2010 WL 1840216, at *7 (Cal. Ct. App. May 10, 2010) ("[T]he essential element of the tort is that the defendant has obtained the plaintiff's property or money by some form of duress."). Examples of duress include "a wrongful threat of criminal or civil prosecution," *Fuhrman*, 231 Cal. Rptr. at 122; forcing a party to accept underpayment of an amount due or face imminent financial ruin, *see Rich*, 204 Cal. Rptr. at 91; and "wrongful use of threats to expose any deformity, disgrace or crime or any secret affecting the victim or his family,'" *Philippine Exp. & Foreign Loan Guarantee Corp. v. Chuidian*, 267 Cal. Rptr. 457, 466–67 (Ct. App. 1990) (quotations and alteration omitted). "In order to establish extortion, "the wrongful use of force or fear must be the operating or controlling cause compelling the victim's consent to surrender the thing to the extortionist." *Chan v. Lund*, 116 Cal. Rptr. 3d 122, 131 (Ct. App. 2010).

In this case, the Complaint alleges that "UOP threatened there would be no diploma unless Gayle paid again and enrolled in UOP to pay for more UOP classes," that "UOP knew, it would be extremely expensive to transfer to another college," and that "UOP took advantage of their position of power and used fear tactics so that Gayle enrolled repeatedly." (ECF No. 11 at 67). The Complaint alleges that "consent to re-enroll in UOP was coerced using her degree as bait. Gayle was unwilling, but UOP used Gayle's desire to earn degree and it [was] the only reason she paid and reenrolled. *Id.* The Court

concludes that the facts alleged plausibly support the inference that University representatives discussed enrollment, fee, application, and degree requirements with Plaintiff. The facts alleged do not plausibly support the inference that Defendants wrongfully threatened criminal or civil prosecution, or exposure of a disgrace or secret. The facts alleged do not support the inference that Plaintiff faced imminent financial ruin if she declined to enroll. Plaintiff fails to allege facts demonstrating she is entitled to relief on a claim of extortion or threats.

### G. Unjust Enrichment

Defendants contend that Plaintiff's unjust enrichment claim fails because California provides no separate cause of action for unjust enrichment. Defendants contend that Plaintiff's failure to state any viable claim for relief, "thus" she fails to assert that any defendant was unjustly enriched or that she is entitled to restitution. (ECF No. 25 at 30).

Plaintiff asserts that evidence in the complaint shows that defendants were unjustly conferred a benefit through mistake, fraud or coercion. Plaintiff asserts that she "was harmed by not receiving benefits of the bargain, while suffering ongoing out of pocket expenses and loan debt she cannot relieve as a result of their 2015 actual fraud defined in Cal. Civ. Code §1572 and [18] U.S.C[.] § 1018." (ECF No. 31 at 7). Plaintiff asserts that she was "dupe[d ]into believing she would be allowed to join UOP's master's program," when "[t]he reality is UOP/Apollo was going after her eligibility to receive Govt. funding for their own enrichment without concern of the benefits for Gayle." *Id.* at 19.

California law provides no "standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (first quoting *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (Ct. App. 2010), then quoting *Jogani v. Superior Court*, 81 Cal. Rptr. 3d 503, 511 (Ct. App. 2008)). However, "[w]hen a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution." *Id.* ("[U]njust enrichment and restitution . . . describe the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.' . . . The

18cv1544-WQH-KSC

return of that benefit is the remedy 'typically sought in a quasi-contract cause of action.' . . .") (first quoting 55 Cal. Jur. 3d Restitution § 2, then quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 166 Cal. Rptr. 3d 864, 872 (Ct. App. 2014)). A court cannot dismiss an unjust enrichment claim on the grounds "that the cause of action was nonsensical because it was duplicative of or superfluous to [Plaintiff's] other claims." *Id.* "The fact that one person benefits another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is unjust for the person to retain it. . . ." *First Nationwide Savings v. Perry*, 15 Cal. Rptr. 2d 173, 179 (Ct. App. 1992). In addition, "as a matter of law, a quasi-contract action for unjust enrichment does not lie where . . . express binding agreements exist and define the parties' rights." *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 114 Cal. Rptr. 2d 109, 125–26 (Ct. App. 2001) ("[A] court cannot . . . substitute [its] own concepts of fairness regarding that subject in place of the parties' own contract.") (quotation omitted).

In this case, the Complaint alleges that "in 1999, UOP's average stock price was 9 dollars per share with 86 thousand enrollments, and 496 million in revenues," and that by the end of 2002 when Plaintiff alleges she completed her degree requirements, "UOP's stock had increased 556% to 64 dollars per share." (ECF No. 11 at 70–71). The Complaint alleges that while the University was failing to provide Plaintiff with the benefits she expected, the University "achieved an average annual growth rate of 33% from 2003 to 2010," officer "Gregory Capelli's 2011 compensation was 25.1 million," and "UOP's parent company built the NFL University of Phoenix football stadium, costing 455 million to build which was not for use of their students." *Id.* The facts alleged reference a contract between Plaintiff and Defendants, and an express contract precludes quasi-contract recovery. *See Cal. Med. Ass'n*, 114 Cal. Rptr. 2d at 125 ("[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where . . . express binding agreements exist and define the parties' rights."). The facts alleged support a plausible inference that Plaintiff paid tuition and took classes between 1999 and 2002. The facts alleged support a

plausible inference that Plaintiff obtained a degree in 2015. The facts alleged do not support the plausible inference that justice requires Plaintiff to receive restitution as to the alleged profits, compensation, or expenditures of Defendants.

## H. Leave to Amend

Defendants contend that dismissal of Plaintiff's claims with prejudice is proper and that amendment would be futile. Defendants assert that Plaintiff's original complaint, first amended complaint, "improper surreply," and the "myriad of exhibits submitted with each of these filings," demonstrate that Plaintiff cannot articulate a viable claim for relief. (ECF No. 50 at 3).

Plaintiff "asserts that she can, in good faith, set forth such claims that are not subject to dismissal through an amendment that will not cause prejudice to Defendants." (ECF No. 31 at 20). Plaintiff requests that if the Court grants Defendants' motion to dismiss, the dismissal of her claims be without prejudice and with leave to amend.

Federal Rule of Civil Procedure 15(a) provides that after the time for amendment "as a matter of course" has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* Federal Rule of Civil Procedure 15 mandates that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a). In *Foman v. Davis*, the Supreme Court offered several factors for district courts to consider in deciding whether to grant a motion to amend under Rule 15(a):

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

371 U.S. 178, 182 (1962); *see also Bowles v. Reade*, 198 F.3d 752, 757–58 (9th Cir. 1999) ("Liberality in granting a plaintiff leave to amend is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile. . . . Additionally, the district court may consider the factor of undue delay. . . .

18cv1544-WQH-KSC

Undue delay by itself, however, is insufficient to justify denying a motion to amend.") (citation omitted). "Not all of the [Foman] factors merit equal weight. . . . [T]he consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citations omitted).

"[L]eave to amend should be granted if it appears *at all possible* that the plaintiff can correct the defect. . . . [T]he rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant." *Crowley v. Bannister*, 734 F.3d 967, 977–78 (9th Cir. 2013) (concluding district court abused discretion by denying pro se prisoner plaintiff leave to amend his second amended complaint that misidentified nurses who allegedly refused plaintiff medical treatment in violation of the Eighth Amendment) (quotations omitted); *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (reversing district court that "provided no explanation for dismissing with prejudice, despite the fact that the operative complaint was the first and only complaint filed by Sharkey, who was proceeding pro se").

"A district court, however, does not abuse its discretion in denying leave to amend where amendment would be futile." *Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002) (citation omitted); *see also Belanus v. Clark*, 796 F.3d 1021, 1027 (9th Cir. 2015) ("Th[e] district court properly dismissed Belanus's complaint without leave to amend for failure to state a cause of action upon which relief could be granted. Based on all the materials Belanus submitted to the district court, it is clear that no amendment could overcome the statute of limitations bar.").

In this case, Plaintiff has amended her complaint. Plaintiff's amended complaint contains 186 pages of factual allegations and exhibits of the facts underlying her claims in this case. Plaintiff's response in opposition to the Motion to Dismiss contains 143 additional pages of contentions, assertions, and additional exhibits. Plaintiff's request for judicial notice contains 18 pages of additional exhibits. Plaintiff's surreply contains 33 additional pages of contentions, assertions, and additional exhibits. Despite liberal construction of all of Plaintiff's filings, she fails to allege facts that state a plausible claim

18cv1544-WQH-KSC

for relief—in part because she fails to comply with the relevant statutes of limitations. The Court finds that allowing Plaintiff to amend her complaint would be futile. In addition, Plaintiff has been dissatisfied with the University's decision not to confer her degree since 2005, and the University ultimately conferred her degree in 2015. Plaintiff chose not to bring suit until 2018. The Court finds that in this case, Plaintiff has unduly delayed bringing her claims. Allowing Plaintiff to amend would cause undue prejudice to Defendants. *See Eminence Capital*, 316 F.3d at 1052 ("[T]he consideration of prejudice to the opposing party that carries the greatest weight.").

## IV. CONCLUSION

IT IS HEREBY ORDERED that the Motions to Dismiss (ECF Nos. 25, 28) are granted. The Complaint (ECF No. 11) is dismissed in its entirety with prejudice.

DATED: 4/18/19

**WILLIAM Q. HAYES**
United States District Judge

18cv1544-WQH-KSC